UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DEBBIE RICCI,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 11-cv-02957** |
| | § | |
| **CLEVELAND INDEPENDENT** | § | |
| **SCHOOL DISTRICT, et al.,** | § | |
| **Defendants** | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants Cleveland Independent School District and Kerry Cowart's Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Strike Exhibits (Doc. No. 37).[1]  After considering the motion and the applicable law, the Court finds that Defendants' motion must be **GRANTED**.

### I.     FACTUAL BACKGROUND

Plaintiff Debbi Ricci ("Ricci" or "Plaintiff") brings this case pursuant to section 1983 and Texas law, seeking damages related to her termination from her position as payroll clerk for the Cleveland Independent School District ("Cleveland ISD").  In her Second Amended Complaint ("SAC"), Ricci seeks damages under section 1983 for alleged violations of her First, Fourth, and Fourteenth Amendment rights.  (Second Amended Complaint ("SAC"), Doc. No. 36, ¶ 1.)  She also asserts a state law negligence claim.  (*Id.*)  Defendants are Cleveland ISD and its Superintendent, Kerry Cowart, in his individual capacity (collectively, "Defendants").  (*Id.*)

---

[1] Because the Court resolves the motion to dismiss in Defendants' favor, it does not reach Defendants' request to strike Plaintiff's exhibits.

Prior to her termination, Ricci worked as a payroll clerk for Cleveland ISD for over twenty years.[2]  (SAC ¶ 8.)  The incident that led to Ricci's termination occurred on or about April 15, 2011.  (*Id.* ¶ 4.)  On that day, Ricci and another Cleveland ISD employee, Jacy Rush ("Rush"), conversed during Ricci's lunch hour.  (*Id.*)  The conversation included small talk about Rush's son.  (*Id.* ¶ 6.)  It also included a brief discussion of the upcoming school board election. (*Id.* ¶ 7.)  On that topic, Ricci encouraged Rush to "participate and vote for some particular candidates" in the upcoming election.  (*Id.*)  Ricci's entire conversation with Rush lasted less than ten minutes.  (*Id.* ¶ 5.)

Almost ten days after her conversation with Rush, Ricci was called in to speak to Cleveland ISD's Superintendent, Kerry Cowart ("Cowart").  (*Id.* ¶ 4.)  Cowart asked Ricci to recount her conversation with Rush on April 15, 2011.  (*Id.*)  After learning that the conversation included a discussion of the upcoming school board election, Cowart terminated Ricci for violating the "Employee Participation" section of Cleveland ISD's employee handbook, which included the following policy:

> An employee's participation in community, political, or employee organization activities shall be entirely voluntary and shall not: (1) interfere with the employee's performance of assigned duties and responsibilities; (2) result in any political or social pressure being placed on students, parents, or staff, and (3) involve trading on the employee's position or title with the District.  (*Id.* ¶ 8.)

Cleveland ISD held a Level III grievance proceeding to review Ricci's termination.  (*Id.* ¶ 11.)  During that proceeding, Cowart was asked to state the basis for Ricci's termination.  (*Id.*) Cowart responded that, in his opinion, Ricci had violated the law in her discussion of the school board election.  (*Id.*)  Cleveland ISD subsequently ratified Ricci's termination.  (*Id.* ¶ 10.) According to the Complaint, the true, albeit unspoken, reason for Ricci's termination was

---

[2] As discussed below, the Court accepts all well-pleaded allegations in the Complaint as true for purposes of the motion to dismiss.

Cowart's desire to silence any political opposition he faced in the upcoming school board election. (*Id.* ¶¶ 18, 20.)

Ricci first filed a complaint on August 11, 2011 (Doc. No. 1). Plaintiff then filed an amended complaint on October 3, 2011 (Doc. No. 7). Defendants filed a motion to dismiss Plaintiff's first amended complaint on October 7, 2011 (Doc. No. 9). After briefing was completed, this Court set a hearing on the motion to dismiss. The Court heard argument on the motion to dismiss on March 27, 2012. At the conclusion of the hearing, this Court ordered Plaintiff to file an amended complaint within thirty days. Instead of filing an amended complaint, Plaintiff's counsel filed a response to the motion to dismiss on April 18, 2012 (Doc. No. 34). The Court then issued an order once again directing Plaintiff to file an amended complaint. (Order, Doc. No. 35.) Plaintiff filed her second amended complaint on April 20, 2012.[3] (Doc. No. 36.) Defendants filed the instant motion to dismiss on May 8, 2012 and an answer to the complaint on May 10, 2012.[4] (Doc. Nos. 37 & 38.) Plaintiff has failed to file any response to the instant motion so the Court is left to consider the merits of Defendants' motion to dismiss without the benefit of Plaintiff's response.

In the instant motion to dismiss, Defendants argue that Ricci has failed to state a claim under section 1983 and contend that the incident that led to Ricci's termination amounted to electioneering in violation of both state law and Cleveland ISD policy. (Doc. No. 9, at 3.) Defendants further assert qualified immunity defenses on behalf of Cowart, as to the constitutional claims, and on behalf of both Defendants with respect to Ricci's state law negligence claim. (*Id.*)

---

[3] Apart from the addition of three exhibits and four new paragraphs, Plaintiff's Second Amended Complaint is largely identical to the First Amended Complaint (Doc. No. 7).
[4] Pursuant to Rule 10(c), Defendants' Motion to Dismiss the Second Amended Complaint (Doc. No. 37) adopts and incorporates their previous motion to dismiss (Doc. No. 9) and briefs in support.

## II.    LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).  A motion to dismiss under Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  To survive a defendant's motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has the requisite facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).  Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient to satisfy a plaintiff's obligation to provide grounds for entitlement to relief. *Twombly*, 550 U.S. at 544.  Although a complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Id.*

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Inv. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  A district court can

consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Further, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff." *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Shultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)). In such cases, the pleadings "must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

### III.   ANALYSIS

The Complaint asserts claims under 42 U.S.C. § 1983 for violations of Ricci's First, Fourth, and Fourteenth Amendment rights. Because the alleged facts relate entirely to Plaintiff's First Amendment claim (in fact, to the exclusion of the other claims) this Court's analysis is necessarily focused on this claim. To state a claim under section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate

that the alleged deprivation was committed by a person acting under color of state law.  *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).  Because there is no *respondeat superior* liability under section 1983, a government entity is liable under section 1983 only where its own custom, policy or practice serves as the moving force behind the violation of the constitutional right at issue.  *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215–16 (5th Cir. 1998).  An individual defendant is liable under section 1983 only for his own violation of a plaintiff's constitutional rights or for acting with deliberate indifference when confronted with the violation of a plaintiff's constitutional rights by his subordinates.  *James*, 535 F.3d at 374.

### a.   Violation of Ricci's Constitutional Rights

### i.   Plaintiff's First Amendment Claim

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee must establish the following four elements: (1) that the employee suffered an adverse employment decision; (2) that she engaged in speech involving a matter of public concern; (3) that her interest in commenting on the matter of public concern outweighed the employer's interest in promoting efficiency; and (4) that her speech motivated the defendant employer's retaliatory action.  *Finch v. Fort Bend Indep. Sch. Dist.*, 33 F.3d 555, 563 (5th Cir. 2003).  If an employee succeeds in demonstrating that the speech at issue involves a matter of public concern, the court must perform a balancing test and attempt to "strike a balance between the interests of the [employee] as a citizen, in commenting upon matters of public concern [against] the interest of the [school district], as an employer, in promoting the efficiency of the public services it performs through its employees."  *James v. Texas Collin County*, 535 F.3d 365, 379 (5th Cir. 2008) (citation omitted).  If the plaintiff meets her burden on these four elements, the defendant

must prove that it would have taken the adverse employment action even absent the protected speech. *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).

Here, Ricci satisfies the first element of analysis, as she clearly suffered an adverse employment action: she was terminated after Defendants learned of her conversation with her co-worker about the upcoming school board election. *See Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."). Further, there is no dispute as to the fourth prong because Defendants concede that Ricci was terminated for her speech encouraging a fellow Cleveland ISD employee to vote for particular candidates in the school board election. (Doc. No. 9, at 3). Defendants contend that Ricci's termination nonetheless was justified because the speech at issue constituted electioneering activity not protected under the Cleveland ISD's internal policies, the laws of the state of Texas, or the Constitution. The Court must therefore consider whether Ricci spoke as a citizen on a matter of public concern and, if so, whether Ricci's interest in her speech outweighed Defendants' interest in promoting workplace efficiency.

### 1.   Ricci's speech addressed a matter of public concern

"Job-required speech" does not fall under the umbrella of First Amendment protection. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d at 693. "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." *Id.* at 692. Instead, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern. *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008). Whether the speech at issue relates to a matter of public concern is a question of law to

be resolved by the court.  *James*, 535 F.3d at 373.  After the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Fifth Circuit adopted the following test to determine whether a public employee has engaged in protected speech:

> *Garcetti* . . . holds that before asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking "as a citizen" or as part of her public job.  Only when the government penalizes speech that a plaintiff utters "as a citizen" must the court consider the balance of public and private interests, along with the other questions posed by *Pickering* and its successors . . . .

*Davis*, 518 F.3d at 312 (adopting test developed by Seventh Circuit in *Mills v. City of Evansville*, 452 F.3d 646, 647–48 (7th Cir. 2006)).  Thus, in determining whether speech involved a matter of public concern, a court must shift its focus "from the content of the speech to the role the speaker occupied when [s]he said it."  *Davis*, 518 F.3d at 312; *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007).

In determining whether speech was made pursuant to an individual's official duties, courts review a number of non-dispositive factors, including: the employee's formal job description; whether the employee spoke on the subject matter of his or her employment; whether the employee raised complaints or concerns up the chain of command; and whether the speech resulted from special knowledge gained as an employee.  *Williams*, 480 F.3d at 682; *Charles v. Grief*, 522 F.3d 508, 513 (5th Cir. 2008).  The court should look to the content, form, and context of the speech in assessing whether speech addresses a matter of public concern.  *Connick v. Myers*, 461 U.S. 138, 147 (1983).

If an individual is determined to have spoken as a citizen, the court must next decide whether the individual's speech addressed a matter of public concern.  "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'"  *Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001)

8

(quoting *Connick*, 461 U.S. at 146). "When an employee speaks purely on a matter of personal interest, clearly no constitutional protection attaches." *See Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998). However, "[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent a finding that the speech as a whole raises issues of public concern." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). In such "mixed speech" cases, the court examines the "content, context, and form of the statements at issue" to determine whether the speech is predominantly public or predominantly private. *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341 (5th Cir. 2003).

At issue here is one nine-minute conversation. (SAC ¶ 5.) The conversation began when Rush, a Cleveland ISD employee, approached Ricci, a payroll clerk, during Ricci's lunch break. The two women casually discussed personal matters—Rush's son requesting days off from work, for example—in addition to school politics. (*Id.* ¶ 6.) The political component of the discussion involved Ricci "encouraging Jacy Rush to participate and vote for some particular candidates in the upcoming School Board Election." (*Id.* ¶ 7.)

Taken together, these facts indicate that Ricci was speaking as a citizen, rather than pursuant to her official duties as a payroll clerk, when she made comments to Rush related to the school board election. No facts suggest that Ricci's formal job duties, tied to her position as payroll clerk, would require Ricci to speak on matters such as the school board election. To the contrary, Defendants contend that Ricci was explicitly prohibited from speaking on such a topic pursuant to the Employee Handbook policy. (Doc. No. 9, at 5.) The fact that the conversation occurred during Ricci's lunch break further underscores the informality of Ricci's remarks, suggesting that she offered her opinion as a lay citizen and not pursuant to her job requirements.[5]

---

[5] Defendants argue that the fact that the conversation took place during Ricci's lunch break is not persuasive on this point because the conversation occurred in Ricci's office, *i.e.*, not in a break room or otherwise off of school

There are no facts to suggest that Ricci's opinions on the school board candidates related to the subject matter of her employment, *i.e.*, performing administrative payroll functions.  Nor is there any suggestion that knowledge Ricci gained on the job would be relevant to her political opinions.  Ricci's remarks to Rush thus have a "relevant analogue to speech by citizens who are not government employees"; that is, any member of the public may have a personal opinion on the candidates for the school board election.  *Clancey v. City of College Station*, No. 4:09-CV-1480, 2011 WL 335148, *8 (S.D. Tex. Jan. 31, 2011) (quoting *Garcetti*, 547 U.S. at 423).

Finding that Ricci spoke to Rush as a citizen, the Court must next consider the content, form, and context of the statement to determine whether Ricci spoke on a matter of public concern.  *Foley*, 355 F.3d at 341.  The Court turns first to the form Ricci's speech took.  Active involvement in political campaigns, such as running for public office and campaigning on behalf of a political candidate, clearly implicates matters of public concern.  *See, e.g.*, *Jordan v. Ector County*, 516 F.3d 290, 297 (5th Cir. 2008) ("We have reiterated . . . that a public employee's campaign activities address matters of public concern."); *Aucoin v. Haney*, 306 F.3d 268, 274 (5th Cir. 2002) ("There is no doubt that campaigning for a political candidate relates to a matter of public concern."); *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995) (finding that "there can be no question that the claimed activity, associating with political organizations and campaigning for a political candidate, related to a matter of public concern"); *Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992) ("It is undisputed that . . . running for elected office, addresse[s] matters of public concern.").

---

property.  (Doc. No. 14, at 7.)  Defendants further suggest that, while Ricci was allegedly on break, it is not as clear that Rush was too.  Instead, Rush approached Ricci, *in Ricci's office*, to speak with her.  (*Id.*)  In this Court's opinion, these two additional facts, even if true, are insufficient to elevate the conversation to anything other than an informal conversation between co-workers.

Here, where Ricci's activity was confined to a brief one-time conversation, it is less clear that Ricci's speech involved the matters of public concern typically implicated by overt political action.  The Complaint does not portray Ricci as active in political campaigns.  However, even though Ricci does not claim to have been actively electioneering, she readily admits that she was encouraging a fellow employee to vote for particular candidates.  (SAC ¶ 18).

As the Supreme Court made clear in *Rankin v. McPherson*, 483 U.S. 378 (1987), even a single, off-hand comment of a political nature is sufficient to constitute a matter of public concern and entitle the speaker to First Amendment protection.  In *Rankin*, the Supreme Court considered whether a clerical employee in a county constable's office was properly discharged after making one remark approving of an assassination attempt on former President Reagan's life.  483 U.S. at 379–80.  In *Rankin*, the plaintiff voiced her opinion on the assassination attempt after listening to the radio at work.  *Id.*  She made the comment to her boyfriend, a fellow employee, and it only happened to be overheard by another employee present in the room.  *Id.*  As the Supreme Court underscored in its decision, "[t]he private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern."  *Rankin*, 483 U.S. at 387 n. 11.  Although the conversation at issue here occurred only between Ricci and Rush, Ricci intended to encourage Rush to vote for Ricci's preferred candidate.  The limited nature of Ricci's political commentary and the fact that she intended for her conversation to remain private does not diminish the importance of the underlying subject matter, *i.e.*, Ricci's political opinions.[6]

---

[6] Plaintiff's response in opposition (Doc. No. 14) to Defendants' motion to dismiss the first amended complaint described the content of Ricci's speech and Ricci's political leanings.  According to that filing, Ricci supported the candidacies of Toby Tullos ("Toby") and Skye Hamilton ("Hamilton") for two open school board positions.  (Doc. No. 14, at 2.)  Toby's brother, Ricky Tullos ("Ricky"), had previously served as athletic director at Cleveland ISD. (*Id.*)  "Due to personal and political differences," Cowart forced Ricky to resign and Cowart now feared that Toby, should he win the school board spot, would oust Cowart in retribution for his role in Ricky's forced resignation. (*Id.*)  Cowart, allegedly concerned that his own position as Superintendent would be jeopardized if Toby were

Courts have repeatedly held that criticisms of school districts and school board actions constitute matters of public concern.  *See, e.g.*, *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 413 (1979) (finding that comments critical of school district policies on desegregation made by a junior high school English teacher constituted a matter of public concern); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 249 (5th Cir. 1984) (ruling that a teacher's criticism of a school board's participation in a federal literacy program constituted speech on a matter of public concern).  Further, "[w]here lower-level government employees have been punished because of their political beliefs and associations, the [Supreme] Court has held that their First Amendment rights were violated."  *Steadman v. Texas Rangers*, 179 F.3d 360, 367 (5th Cir. 1999); *see also Branti v. Finkel*, 445 U.S. 507, 517 (1980) (explaining that "there is no requirement that dismissed employees prove that they, or other employees, have been coerced into changing, either actually or ostensibly, their political allegiance;" instead, they must merely show that they were "discharged because they were not affiliated with or sponsored by" a particular party).  As "the [Supreme] Court has frequently reaffirmed[,] . . . speech on public issues occupies the 'highest rung of the hierarchy of First Amendment values' and is entitled to special protection." *Connick*, 461 U.S. at 145 (quoting *NAACP v. Claiborne Hardware Co.*, -- U.S. --, --, 102 S. Ct. 3409, 3426 (1982)).  The content of Ricci's comments—expression of political preferences in the school board election—weigh in favor of finding that Ricci's speech addressed a matter of public concern.

---

elected, favored the candidacies of Kent Dark and Lynn Coffman.  (*Id.*)  Ricci contends that she was fired because her political leanings, as expressed in her conversation with Rush, were adverse to Cowart's personal political interests.  (SAC ¶ 18.)  Given that Ricci's First Amendment claim hinges on her political opinions, the Court finds it distressing that the SAC spends even less time explaining Ricci's political leanings—indeed, failing to mention them altogether—than was spent in the original complaint.  The explanation given here is provided for context only; because the SAC fails to elaborate on Ricci's political leanings and the specifics of the school board election, the Court does not take these details into account in rendering its decision.

Finally, turning to the context of Ricci's statement, it is apparent that Ricci made her comments against the backdrop of a school board election. Although it is unclear from the Complaint exactly when the election was scheduled to occur in relation to Ricci's comments, both parties suggest it was upcoming. The Complaint suggests that the specific candidates had already been announced. (SAC ¶ 18). Defendants, too, implicitly acknowledge that the election was upcoming, pointing out that Cleveland ISD's facilities were to be used to house early voting. (Doc. No. 9, at 5). The fact that Ricci expressed preference for a particular candidate and encouraged Rush to vote as the election was approaching further supports a finding that Ricci's comments addressed a matter of public concern.

Defendants argue that Plaintiff has not alleged sufficient facts in her Complaint to justify the progression of this case beyond the motion to dismiss stage. While true that the Complaint is not a model of clarity, it nonetheless alleges that Ricci was encouraging her colleagues to vote for a particular candidate in the upcoming school board election. (SAC ¶ 16.) The candidate was a candidate "running against Kerry Cowart's candidate" and "Cowart had a vested interest in opposing Ricci's candidate of choice." (*Id.* ¶ 20.) After learning of Ricci's comments on the election, Cowart summarily terminated Ricci for violating the provision in Cleveland ISD's Employee Handbook prohibiting an employee's participation in political activity from causing "pressure" to be placed on staff. (*Id.* ¶ 8.) Ricci further alleges that "[s]olely because [she] was promoting the candidacy of a candidate whose interest was adverse to Cowart, Coward decided to use his position to carry out his own personal agenda" stifle politically opposing viewpoint. (*Id.* ¶ 28).

The alleged facts are sufficient to state a claim for retaliatory termination made in violation of the First Amendment. The Supreme Court has cautioned that "[v]igilance is

necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employees' speech." *Rankin*, 483 U.S. at 384. The very scenario cautioned against is the one the Court confronts here. In fact, the scenario here requires even greater vigilance, as Defendants acknowledge that Ricci was fired on account of her political activity but claim that political activity was lawfully circumscribed under Cleveland ISD's written policy. (Doc. No. 9, at 3.) The Complaint thus adequately alleges facts to suggest that, when Ricci encouraged Rush to vote for particular candidates in the school board election, she spoke as a private citizen on matters addressing a public concern.

### 2. Cleveland ISD's interest in banning all political "pressure" does not outweigh Ricci's First Amendment interest

Because Ricci's statement addressed a matter of public concern, the Court must perform the balancing analysis set forth in *Pickering v. Board of Education* to determine whether Ricci's interest in commenting on the school board election outweighed Cleveland ISD's interest, "as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The burden rests on Defendants to justify the termination on legitimate grounds. *Connick*, 461 U.S. at 150. "In performing the balancing, the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin*, 483 U.S. at 388.

Here, Defendants' argument as to the validity of the termination turns entirely on a particular school policy contained in Cleveland ISD's employee handbook. Defendants contend that Cleveland ISD's policy banning all political "pressure" constituted a valid viewpoint neutral ban on political speech on school property. (Doc. No. 9, at 5–6.) The specific policy at issue states:

14

> An employee's participation in community, political, or employee organization activities shall be entirely voluntary and shall not: (1) interfere with the employee's performance of assigned duties and responsibilities; (2) result in any political or social pressure being placed on students, parents, or staff, and (3) involve trading on the employee's position or title with the District.  (Compl. ¶ 11.)

Defendants maintain that Ricci was fired for violation of the second prong of the policy; that is, Ricci's statement placed pressure on Rush to vote for certain candidates in the school board election.  (Doc. No. 9 at 5.)  In support of the validity of their policy, Defendants point to several state statutes banning what Defendants claim is similar conduct to that covered by Cleveland ISD's policy here.  Defendants first point to the Texas Election Code, which makes it a misdemeanor to "electioneer for or against any candidate, measure or political party" within one-hundred feet of the entrance to a polling place during the early voting period.  TEX. ELEC. CODE ANN. §§ 61.003, 85.036 (West 2010).  Because the Cleveland ISD administration building—where Ricci worked—served as an early voting site, Defendants suggest that Ricci's conduct would have violated Texas law, in addition to the policy found in the employee handbook.  (Doc. No. 9, at 5.)  Defendants also highlight portions of the Texas Education Code prohibiting school district employees from "directly or indirectly coerc[ing] any teacher to refrain from participating in political affairs in the teacher's community, state, or nation."  TEX. EDUC. CODE ANN. § 21.407(b).

While these two Texas statutes clearly suggest that coercive political activity may be regulated under certain circumstances, the alleged facts at issue here do not clearly indicate that either statute would necessarily have prohibited Ricci's conduct.  With respect to the Texas Election Code provisions, it is unclear from the parties' briefing whether early voting was actually taking place at the time Ricci's political speech occurred.  Further, Defendants do not demonstrate how the selected provisions of the Texas Education Code would apply to the factual

scenario before the Court now.  The Texas Education Code specifically references the coercion of *teachers*, but it is unclear here what position Rush held at the school.  If Rush—the employee Defendants claim was coerced by Ricci's speech—was not a teacher, but rather held an administrative position more similar to Ricci, it is unclear that the Texas Education Code would even apply to the conversation in question.  While the state statutes clearly set some parameters on coercive political speech, Cleveland ISD's policy goes much further, banning all political activity involving "political or social pressure."  (Compl. ¶ 8.)

Taking into consideration all the relevant facts here, Defendants have failed to demonstrate a state interest that outweighs Ricci's First Amendment rights.  The state interest element of the balancing analysis centers "on the effective functioning of the public employer's enterprise."  *Rankin*, 483 U.S. at 387.  Pertinent considerations include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin*, 483 U.S. at 388.  Although Ricci's statement was made in the workplace, there is no evidence that it interfered with the efficient functioning of the school or the school's administration.  Ricci contends that her conversation with Rush occurred during Ricci's lunch hour, and Defendants do not suggest that other employees or members of the public were present or otherwise overheard Ricci's remarks.  Further, according to the Complaint, it was *Rush* who initiated the conversation; there is no suggestion that Ricci was actively campaigning for her preferred candidates.

Aside from ostensibly violating Cleveland ISD's employee handbook, Defendants do not demonstrate how Ricci's conversation interfered with the effective functioning of the school.  In

general, a school employee's "employment relationships with the [School] Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning."   *Pickering*, 391 U.S. at 570.   This seems to be the case here; Defendants do not contend that Ricci, an administrative clerk, had any kind of close working relationship with Cowart.   "Where, as here, an employee serves no confidential, policymaking, or public contact role, the danger to the agency's successful functioning from that employee's private speech is minimal."   *Rankin*, 483 U.S. at 390  91.   Thus, Defendants fail to demonstrate how Ricci's private expression of her political preferences upset or impeded the proper functioning of Cleveland ISD or otherwise undermined the role and office of the Superintendent.

Instead of pointing to facts that would justify Ricci's termination, Defendants seek to rely on Cleveland ISD's incredibly broad ban on all political "pressure."   The very fact that Ricci's conduct apparently falls into the definition of the "political pressure" prohibited under Defendants' policy reveals how overbroad the policy is.   The ban, if applied correctly to Ricci as Defendants claim, apparently equates any expression of political opinion—no matter how brief or casual—with "political pressure" sufficient to justify termination.

An employee's political beliefs may only serve as the basis for termination in very limited circumstances.   "[I]f an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency."   *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995).   At the other end of the spectrum is the need "to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employees'

17

speech." *Rankin*, 483 U.S. at 384.   Here, Plaintiff alleges that Defendants impermissibly terminated her employment *on account of her specific political affiliation* and without any lawful justification.   If Ricci's contentions are true and she was terminated in retaliation for her support of certain candidates in the School Board election, then Defendants have impermissibly penalized her for the protected exercise of her political beliefs.   *See Branti v. Finkel*, 445 U.S. 507, 515–16 (1980) ("[U]nless the government can demonstrate "an overriding interest," "of vital importance," requiring that a person's private beliefs conform to those of the hiring authority, his beliefs cannot be the sole basis for depriving him of continued public employment."); *Elrod v. Burns*, 427 U.S. 347, 351 (1976) (holding that the newly elected Democratic Sheriff of Cook County, Illinois, violated the constitutional rights of certain non-civil-service employees by discharging them "because they did not support and were not members of the Democratic Party."); *Perry v. Sindermann*, 408 U.S. 593, 597–98 (1972) (holding that even an employee with no contractual right to retain his job cannot be dismissed for engaging in constitutionally protected speech).

In this case, Plaintiff's particular political affiliation, *i.e.*, her support of a candidate opposed to Superintendent Cowart's interests, was not the stated ground for terminating her from her position.   Instead, Defendants have allegedly hidden any impermissible reasons for the termination behind a broad policy prohibiting all "political pressure."   Pointing to the existence of a policy ostensibly justifying Ricci's termination does not tip the *Pickering* scale in favor of Defendants.   Aside from the existence of their policy—the scope of which may very well be unjustified—Defendants have presented "no countervailing considerations" against Ricci's right to support the candidates she preferred.   *See Click v. Copeland*, 970 F.2d 106, 112 (5th Cir. 1992).   Given Ricci's position in the office, the nature of her statement, and the administrative

function of the office in which she worked, the Court is not persuaded that Defendants' interest in banning all political pressure on its campus outweighed Ricci's rights under the First Amendment. Therefore, Ricci has adequately stated a claim for violation of her First Amendment free speech rights.

### ii. Plaintiff's Fourth Amendment Claim

The Complaint's inclusion of a claim for violation of the Fourth Amendment is nonsensical. The Fourth Amendment prohibits unlawful searches and seizures. *See* U.S. Const. amend IV. While the basis for Plaintiff's Fourth Amendment claim is not entirely clear, the Complaint alleges that Defendants' conduct violated Ricci's right to "freedom from the use of excessive, unreasonable and unjustified force against her person." (*Id.* ¶ 36.) None of Plaintiff's allegations support this claim. The only facts alleged in the Complaint relate to Ricci's conversation with Rush and her subsequent termination. No facts allude to any conduct by Defendants that would fall into the sphere of conduct the Fourth Amendment seeks to prevent.

### iii. Plaintiff's Fourteenth Amendment Claim

Neither the Complaint nor Plaintiff's briefing explains the basis of Plaintiff's Fourteenth Amendment claim, *i.e.*, whether Plaintiff claims a due process violation or an equal protection violation. Plaintiff alleges no facts suggesting an equal protection violation. Further, any argument that Plaintiff seeks to advance based on deprivation of her at-will employment status fails to support either a due process or equal protection claim. In order to state a due process claim, Plaintiff must allege a protected property or liberty interest. *Whiting v. Univ. of Southern Mississippi*, 451 F.3d 339, 344 (5th Cir. 2006). A property interest is not incidental to public employment; it must be created by an independent source, such as state law. *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003). Texas is an at-will employment state. The at-will

relationship may be altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated. *Id.* Plaintiff has alleged no facts that she was employed pursuant to a contract that limited Defendants' right to terminate her. Similarly, Plaintiff fails to allege facts to demonstrate that her termination constituted a violation of a protected liberty interest, which requires a showing that the reason for the discharge was (i) false, (ii) stigmatizing, and (iii) caused her to be denied other employment opportunities. *Whiting*, 451 F.3d at 347. Ricci has failed to allege facts to support a cause of action for a violation of her rights under the Fourteenth Amendment.

**b.  Defendant Cowart is Entitled to Qualified Immunity**

Section 1983 claims against public officials in their individual capacities are subject to the defense of qualified immunity. *Foley*, 355 F.3d at 338. An official is eligible for qualified immunity even if the official violated another's constitutional rights. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Schultea v. Wood*, 47 F.3d 1427, 1432–34 (5th Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). The appropriate inquiry can be summarized as "whether the state of the law [at the time of the violation] gave [defendants] fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Williams v. Kaufman County*, 352 F.3d 994, 1003 (5th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

An individual defendant's subjective state of mind is irrelevant to the qualified immunity inquiry. *Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001).

In examining whether an official is entitled to qualified immunity, a court must conduct the two-pronged analysis outlined in *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). First, the court must determine whether the defendant's conduct violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, the court must determine whether the right in question was clearly established. *Id.* After the Supreme Court's decision in *Pearson v. Callahan*, a court may exercise discretion in deciding which of the two prongs should be addressed first in light of the circumstances of the particular case. 555 U.S. at 236. Though *Pearson* outlines only the two steps described above in the qualified immunity analysis, several Fifth Circuit panels have concluded that the "qualified immunity question" involves not only an inquiry into whether the right was clearly established at the time of the conduct, but also whether the official's action was objectively reasonable in light of the rules clearly established at the time it was taken. *See, e.g., Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009); *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."); *Lukan v. North Forest Indep. Sch. Dist.*, 183 F.3d 342, 346 (5th Cir. 1999). That is, "[t]he defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution." *Thompson*, 245 F.3d at 457.

As discussed above, Ricci has adequately stated a claim for violation of her First Amendment rights. The Court thus proceeds to the second step of the qualified immunity

analysis and examines whether Ricci's constitutional right "existed at the time of the violation so that [the defendants'] behavior may be deemed objectively unreasonable." *Alexander v. Eeds*, 392 F.3d 138, 146 (5th Cir. 2004). Ricci "must show that the 'contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . Qualified immunity should not be denied unless the law is such that reasonable officials should be 'on notice [that] their conduct is unlawful.'" *Id.* at 146–47 (quoting *Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004)).

The law regarding adverse employment actions has long included termination as actionable conduct. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *Faruki v. Parsons*, 123 F.3d 315, 318 (5th Cir. 1997). At the time of the alleged violation of Ricci's free speech rights, both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech. *Pickering*, 391 U.S. at 568; *Connick*, 461 U.S. at 146–47; *United States v. Mauricio*, 685 F.2d 143, 147 (5th Cir. 1982). Further, the law has long prohibited retaliation against employees on account of political affiliation. As the Fifth Circuit has explained, "by January 1992 at the latest, the law was [] clear that . . . a public employer cannot act against an employee because of the employee's affiliation or support of a rival candidate unless the employee's activities in some way adversely affect the government's ability to provide services." *Vojvodich*, 48 F.3d at 887 (citation omitted).

Although clear precedent at the time of Ricci's termination put Cowart on notice that he could not fire employees for their political opinions, the factual scenario here is less clear because Cowart claims to have fired Ricci because he believed that her comments violated Cleveland ISD policy and state law prohibiting electioneering at early voting facilities. (Doc.

No. 9, at 12.)   Defendants thus claim that Cowart had "no intent to violate any rights of Plaintiff," he simply believed he was enforcing school policy and state law.  (*Id.*).

"It is clearly established that public universities have the right to promulgate content-neutral time, place, and manner restrictions on free speech that serve a legitimate purpose of facilitating educational objectives."  *Sonnier v. Crain*, 649 F. Supp. 2d 484, 495 (E.D. La. 2009); *Widmar v. Vincent*, 454 U.S. 263, 267–71 (1981).  Thus, school speech policies that explicitly state that that they are made pursuant to the First Amendment and that do not discriminate on the basis of content may be upheld in some circumstances.  *See Sonnier*, 649 F. Supp. 2d at 495 (finding that university speech policy that set two-hour speaking limits per week and required seven-day pre-approval process prior to speech was lawful); *see also Bowman v. White*, 444 F.3d 967, 980–81 (8th Cir. 2006) (holding that the university policy requiring a permit and a three-day notice requirement for non-university speech activities was constitutional).  Where reasonable public officials could differ on the lawfulness of the official's actions, the official is entitled to qualified immunity.  *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994).  Given that Defendant Cowart was acting pursuant to Cleveland ISD policy, his actions cannot be said to have been objectively unreasonable.

The further qualified immunity analysis is made difficult by Plaintiff's unhelpful briefing on the subject.  Despite multiple opportunities to do so, Plaintiff has repeatedly failed to overcome Cowart's assertion of qualified immunity.  In emphasizing that her candidate opposed Cowart's preferred school board candidate, Plaintiff insinuates that Cowart's actions with respect to her termination were not those of an impartial and objective public official.  (SAC ¶ 28.) Instead, Cowart allegedly "decided to use his position to carry out his own personal agenda." (*Id.*)

Where the critical issue is one of subjective motive, as it is here, the "plaintiff must put forward specific, nonconclusory factual allegations" to establish the alleged improper motive. *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (J. Kennedy, concurring).  Plaintiff contends that Cowart was acting to advance his own personal political agenda when he terminated her.  But Plaintiff's contention is conclusory, as she fails to allege any factual support for her conclusion about the partiality of Cowart's actions.  Plaintiff attaches three exhibits to the Second Amended Complaint; all three fail to advance Plaintiff's suggestion that Cowart acted with bias.[7]  Specifically, all three of Plaintiff's proffered exhibits fail to identify any connection to the time, place, policy and election relevant to this suit.  In addition, not one of the three documents draws any connection to any action or inaction by Defendant Cowart.[8]

Defendants concede that Cowart fired Ricci because he believed she was in violation of the school policy prohibiting all employees from putting political pressure on their co-workers; Ricci has failed to allege facts to demonstrate that Cowart applied that policy discriminatorily so as to purge the school of supporters of his political opponents.  Plaintiff's allegations of Cowart's impartiality are conclusory at best.  Because impartial application of the school's policy is not

---

[7] The first proposed exhibit, Exhibit "A," appears to be an email from Katy Scott ("Scott") stating that she remembers "staff members encouraging others to vote for school board candidates."  (SAC, Plaintiff's Exhibit A.)  She also purports to remember "lots of talk around Thomas Davison's time" and states that she is "sure there was other talk favoring specific candidates that [she] do[esn't] remember."  (*Id.*)  The Complaint refers to Scott as "a former employee of CISD."  (SAC ¶ 24.)  Nowhere, either in the Complaint or in the email itself, does Plaintiff include facts to explain what year Scott is referring to, to what district she worked for, whether the same policy at issue here was in place, or whether Scott worked for Defendant Cowart.  The remaining two exhibits similarly fail to advance Plaintiff's efforts to overcome qualified immunity.  Plaintiff's Exhibit "B" purports to be a letter from Tammy Tullos ("Tullos") stating that she campaigned for one Robert Howell while employed at Northside Elementary School.  Like Exhibit A, this letter fails to situate Tullos in the same school and the same election year as Ricci.  Nor does it suggest that Cowart was in any way involved or that CISD's electioneering policy was in existence.  Plaintiff's Exhibit "C" is an account from Ernestine Belt ("Belt"), allegedly a former principal of Douglas School, suggesting that when she was principal the school had a policy that allowed "members of precinct 20 to use the school gym for electioneering and political meetings."  (SAC ¶ 26.)  Nowhere does Plaintiff allege that Cowart was superintendent during Belt's tenure or that the electioneering policy at issue here was in place.

[8] Because the Court finds all three exhibits to be substantively insufficient to overcome Defendant Cowart's defense of qualified immunity, it need not reach Defendants' objections to the admissibility and authentication of Plaintiff's exhibits.

indicative of objectively unreasonable action, Defendant Cowart is entitled to qualified immunity from Ricci's claims.

### c.  The School District's Municipal Liability

Finding that a constitutional violation occurred, the Court must now consider whether Plaintiff has demonstrated an adequate basis for holding Cleveland ISD liable under section 1983.  Because Cleveland ISD is a public school, principles of municipal liability apply and Cleveland ISD cannot be held liable for the acts of its employees under a theory of *respondeat superior*.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 702 (1989).  Rather, it will only be held liable for its own acts, *i.e.*, acts that it "officially sanctioned or ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

"[M]unicipal liability under section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Id.* at 483–84.  Municipal liability may be based on a formal regulation or policy statement, or it may be based on an informal "custom" so long as this custom amounts to "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citation and internal quotation marks omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).  Municipal liability may be also be based on the decisions of employees with final policymaking authority or the ratification by such final policymakers of the decisions of subordinates to whom authority was delegated subject to these policymakers' review and approval. *See Pembaur*, 475 U.S. at 480–81; *Praprotnik*, 485 U.S. at 123–27.  Finally, municipal liability may stem from injuries caused by a failure to

adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused. *City of Canton v. Harris*, 489 U.S. 378, 388–91 (1989).

Defendants contend that Cowart was not a "final policymaker" for purposes of municipal liability and, therefore, Cleveland ISD cannot be held liable for his retaliatory termination of Ricci. (Doc. No. 9, at 10.) Defendants are correct that the Texas Education Code vests the school district's board of trustees with final policymaking authority. *See* Tex. Educ. Code § 11.151; *see also Jett*, 7 F.3d at 1245 ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees."). The Texas Education Code also allows the board of trustees to delegate both decision-making and policy-making authority. *See Jett*, 7 F.3d at 1246. Here, because the Complaint does not allege that Cowart acted pursuant to any policymaking authority, Cleveland ISD cannot be held liable for his actions. *See, e.g., Beattie v. Madison County Sch. Dist.*, 245 F.3d 595, 602 (5th Cir. 2001) (finding that a sheriff's improper hiring and firing decisions, made without formal designation of authority to control the county's employment policy, would not give rise to municipal liability).

While Cleveland ISD may not be liable for the actions of Cowart taken in his role as Superintendent, it may nonetheless be liable for its own actions in affirmatively ratifying the improper action taken by a final policymaker. *See Pembaur*, 475 U.S. at 480–81. The Complaint alleges that, following Ricci's termination, Cleveland ISD held an administrative "level III grievance" proceeding. (SAC ¶ 11.) At the hearing, Cowart was allegedly questioned as to the rationale behind the termination. (*Id.*) After Cowart explained that the termination was based on his belief that Ricci had violated the law, Cleveland ISD ratified Ricci's termination. (*Id.* ¶ 10.)

Although the Complaint alleges that Cleveland ISD ratified Cowart's actions, it once again fails to identify Cowart as the relevant policymaker or otherwise allege facts in support of that contention.   There is no allegation that Cowart was delegated policymaking authority through an express statement, job description, or other formal action.   Further, there are no facts alleged to support a claim that Cowart had implicit policymaking authority through custom or practice.   The final policymaker under Texas law is the Board of Trustees, and there is no allegation that the Board of Trustees took any action here for Cleveland ISD to ratify.   *See* TEX. EDUC. CODE § 11.151.   Further, there are no allegations suggesting that the Board of Trustees had otherwise delegated policymaking authority to Cowart—the only real actor here.

Although Cleveland ISD may have ratified Ricci's termination, there is no allegation that it ratified a decision made by a final policymaker, as required for municipal liability under section 1983.   Because the Complaint insufficiently alleges that Cleveland ISD took action on its own or otherwise ratified the unlawful decision of a policymaker, Ricci fails to adequately establish municipal liability against Cleveland ISD for the retaliatory action taken by Cowart against Plaintiff.

### d.   Ricci's state law negligence claim also must fail

The Complaint asserts that Ricci is suing "under Common law of the State of Texas" and alleges that "Cowart negligently applied [Cleveland ISD's] Employee Handbook and Board Policy."[9]   (Compl. ¶ 20–21).   Negligence is not a constitutional violation and therefore cannot support a section 1983 claim.   *Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 (5th Cir. 2001).   The Complaint asserts no facts in support of Ricci's state law negligence claim but, to the extent such a claim exists, "the Eleventh Amendment bars the adjudication of pendent state law

---

[9] As discussed above, the Complaint is misnumbered in several places.   Here, the Court refers to the second set of paragraphs numbered 20–21.

claims against nonconsenting state defendants in federal court." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533 (2002).  Tort actions against governmental entities, such as that alleged in the Complaint, are also prohibited by state law.  *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001, 101.021 (West 2011).

The Texas Tort Claims Act ("TTCA") waives immunity for certain negligence claims. Specifically, a limited waiver of immunity under the TTCA is available for claims related, at least in part, to:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
> > (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
> > (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021; *see, e.g., Pierson v. Houston Indep. Sch. Dist.*, 698 S.W.2d 377, 380 (Tex. App.—Houston [14th Dist.], 1985, writ ref'd n.r.e.) (holding that the school district was "immune from liability for the alleged negligence of its agents . . . except to the extent immunity is waived by the Texas Tort Claims Act").  Here, Plaintiff's claim does not fall within the scope of the TTCA.  Plaintiff does not allege any property damage, personal injury, or death arising from the use of motor-driven equipment, nor does she allege any personal injury or death caused by an unsafe condition on state-owned premises.  There has been no waiver of immunity by Cleveland ISD for negligence or other tort claims stemming from termination of an at-will employee.

The TTCA also provides immunity to the employee of a governmental unit by requiring either the substitution of the governmental entity for the employee or the dismissal of the

plaintiff's claims against the employee when the suit is based on conduct within the general scope of that employee's employment and could have been brought under the TTCA against the governmental unit.  *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f).  Here, Ricci asserts her negligence claim against Cleveland ISD and Defendant Cowart for the same conduct: Cowart's termination of her employment.  (Compl. ¶ 20).  As a result, Plaintiff's negligence claim against Cowart is barred under the TTCA.  Because Ricci's negligence claim does not meet the requirements for a limited waiver of immunity under the TTCA, Ricci's negligence claims against both Cleveland ISD and Cowart are barred under the TTCA and must be dismissed.

## IV.    CONCLUSION

Ricci has alleged facts sufficient to state a claim for violation of her First Amendment rights.  However, because Defendant Cowart is protected by qualified immunity and because Plaintiff has failed to allege facts to demonstrate that Defendant Cleveland ISD ratified unconstitutional action taken by a final policymaker, Defendants' motion to dismiss (Doc. No. 37) must be **GRANTED**.  In addition, because Ricci's state law negligence claim does not meet the requirements for a waiver of immunity under the TTCA, Ricci's state law negligence claim is also **DISMISSED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 17th day of July, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE